# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| MARK T. SPIVEY, individually | : | |
| and on behalf of a class of all | : | |
| others similarly situated, | : | CIVIL ACTION NO. |
| | : | 1:04-CV-1912-RWS |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

Jimmy R. Woods, a former employee of the Southern Company, filed

this putative class action in late June, 2004.  In his Complaint, he alleged that

Defendants violated their duties as ERISA[1] fiduciaries *vis-a-vis* the Southern

Company Employee Savings Plan (the "Savings Plan" or "Plan") through

maintenance of a substantial, ill-fated investment in Mirant Corporation

---

[1] Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §
1001, et seq..

("Mirant").  Mr. Woods, in particular, alleged that Defendants were aware, or through a reasonable investigation, should have been aware, of scandalous and unlawful activities taking place within the former Southern Company subsidiary, but nevertheless held tremendous amounts of Mirant stock in the Plan as its value dropped precipitously from $47 to $0.25 per share.[2]

During the pendency of this suit, Mr. Woods died, and Mark T. Spivey (hereinafter "Plaintiff") was substituted as the putative class representative. (See Mot. to Am. [75]; Second Am. Compl. [77].)  Defendants now claim that they are entitled to summary judgment, because Plaintiff, by his own admission, neglected to pursue administrative remedies before filing suit.  (See Def.'s Mot. for Summ. J. [115].)[3]

## Discussion

**I.    Procedural Standard**

Federal Rule of Civil Procedure 56 requires that summary judgment be

---

[2] A more comprehensive discussion of the allegations giving rise to this controversy can be found at Woods v. Southern Company, 396 F. Supp. 2d 1351 (N.D. Ga. 2005).

[3] The parties agree that Mr. Woods similarly did not pursue administrative remedies prior to initiating this action.

2

granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.' "

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.

Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party

makes such a showing, the burden shifts to the non-movant, who must go

beyond the pleadings and present affirmative evidence to show that a genuine

issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

   The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

3

is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Defendants are Entitled to Summary Judgment

The law in this Circuit is "well-settled that 'plaintiffs in ERISA actions

must exhaust available administrative remedies before suing in federal court.' "
Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000)
(quoting Counts v. Am. Gen. Life & Accident Ins. Co., 111 F.3d 105, 108
(11th Cir. 1997)); see also Springer v. Wal-Mart Assocs. Group Health Plan,
908 F.2d 897, 899 (11th Cir. 1990) (holding likewise); Mason v. Cont'l Group,
Inc., 763 F.2d 1219, 1225-27 (11th Cir. 1985) (same). "This requirement
applies to actions in which the plaintiff sues individually as well as actions
where the plaintiff sues as a representative of a putative class." In re Managed
Care Litig., 298 F. Supp. 2d 1259, 1295 (S.D. Fla. 2003).

The Eleventh Circuit, moreover, has taken the position that the
exhaustion doctrine is not limited to claims for benefits under a particular plan,
but also applies to claims arising from the substantive provisions of the statute
itself–including, it would seem, claims based on the defendant's breach of an
ERISA-imposed fiduciary duty. Perrino, 209 F.3d at 1315 n.6; Springer, 908
F.2d at 899; Mason, 763 F.2d at 1226-27; Bickley v. Caremark Rx, Inc., 361 F.
Supp. 2d 1317, 1336 (N.D. Ala. 2004); see also Harrison v. United Mine
Workers of Am. 1974 Benefit Plan & Trust, 941 F.2d 1190, 1193 (11th Cir.
1991) (reaffirming principle); Curry v. Contract Fabricators Inc. Profit Sharing

Plan, 891 F.2d 842, 846 (11th Cir. 1990) (doing likewise), abrogated on other grounds in Murphy v. Reliance Standard Life Ins. Co., 247 F.3d 1313, 1314 (11th Cir. 2001).

>    The purposes served by the exhaustion requirement are manifold.

>>    Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.  [Cits.]  In addition, imposing an exhaustion requirement in the ERISA context appears to be consistent with the intent of Congress that pension plans provide intrafund review procedures.

Mason, 763 F.2d at 1227.

>    Ultimately, the decision whether to enforce the exhaustion requirement resides within the district court's discretion.  See Perrino, 209 F.3d at 1315 (recognizing discretion of district court); Stinger, 908 F.2d at 899 (same).  That said, a review of the decisions within this Circuit illustrates a pronounced disinclination to dispense with exhaustion except where the failure to exhaust falls within a limited number of recognized exceptions.  See Counts, 111 F.3d

at 108 ("[D]istrict courts have discretion to excuse the exhaustion requirement

when resort to administrative remedies would be futile or the remedy

inadequate."); Perrino, 209 F.3d at 1315-16 ("[W]e strictly enforce an

exhaustion requirement on plaintiffs bringing ERISA claims in federal court

with certain caveats reserved for exceptional circumstances.  [Cit.]  Thus far,

our circuit has recognized exceptions only when 'resort to administrative

remedies would be futile or the remedy inadequate,' [cit.] or where a claimant

is denied 'meaningful access' to the administrative review scheme in place . . .

."); Bickley, 361 F. Supp. 2d at 1336 (explaining that litigant wishing to avail

himself of the exceptions to the exhaustion rule bears a "heavy burden"); Byars

v. Coca-Cola Co., 1:01-CV-3124-TWT, 2004 WL 1595399, at *2-*3 (N.D. Ga.

Mar. 18, 2004) (describing exceptions to exhaustion requirement as "narrow,"

recognized: "[t]he Eleventh Circuit applies the exhaustion doctrine in a strict

fashion, and is disinclined to excuse . . . [a litigant's non]compliance"); In re

Managed Care Litig., 298 F. Supp. 2d at 1295 ("This Court must 'apply the

exhaustion requirement strictly' and 'recognize narrow exceptions only based

on exceptional circumstances.' ") (quoting Perrino, 209 F.3d at 1318); see also

Watts v. BellSouth Telecomms., 316 F.3d 1203, 1209-10 (11th Cir. 2003)

(recognizing "exception" to exhaustion requirement where "a plan claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies").

In the instant case, Plaintiff argues that his failure to initiate or exhaust the administrative review process is not fatal to his suit. First, he contends that the Savings Plan requires no exhaustion of the sort of claims brought here. Second, he argues that, in any event, his failure to exhaust falls within recognized exceptions to the exhaustion rule. The Court, for the reasons that follow, finds neither argument persuasive.

### A.    Plaintiff was Required to, but Did Not, Exhaust Administrative Remedies Before Bringing Suit

The Southern Company distributes a publication to all plan participants entitled *Your Guide to Benefits* (the "*Guide*").[4] The *Guide* contains a summary

---

[4] In support of its Motion to Dismiss, Southern Company produced an authenticated copy of the *Guide* in effect at the time Plaintiff filed the Second Amended Complaint. Upon Plaintiff's objection that the 2005 *Guide* was not in existence at the time Mr. Woods initiated suit, it also included in the record an earlier version of the *Guide* in effect during 2004. The two iterations of the *Guide*, for present purposes, are substantially similar, if not identical. For the sake of consistency, the Court's citations to the *Guide* here direct the reader to the page numbers which correspond to the 2005 edition, attached to the Affidavit of Gregory F. Marshall, submitted in support of

plan description ("SPD") for Southern Company's ERISA plans, including the Savings Plan, along with additional information respecting the administration of the plans and participants' entitlement to benefits.  Plaintiff does not dispute that he had access to this document.

The *Guide* includes a section entitled, "Administrative Information," the preamble to which explains, "This section contains information on the administration of your benefit Plans, contacts you may need in certain situations[,] and your rights as a Plan participant."  (See *Guide* at R1.)  At issue in the instant litigation are two subsections, labeled, respectively, "YOUR RIGHTS UNDER ERISA" and "CLAIM DENIAL."  (See id. at R6-R8.)  The former provides, in pertinent part:

> YOUR RIGHTS UNDER ERISA
> . . .
> The people who operate your Plans, called "fiduciaries," have a duty to do so prudently and solely in the interest of you and other Plan participants and beneficiaries.  Fiduciaries who violate the provisions of ERISA may be removed and required to make good any losses they have caused the Plan by virtue of their breach of their fiduciary duties.  No one – including your employer, your union or any other person – may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit for exercising your rights under ERISA.
> . . .

Defendant's Motion for Summary Judgment, at Exhibit 3.

9

> Provided you have fully exhausted the Plan's claims and review procedures, you may file suit in a federal or state court if you have a claim for benefits that is denied or ignored in whole or in part.  In addition, if you disagree with the plan's decision on a final appeal or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in federal court.  If a Plan fiduciary misuses Plan money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or file suit in federal court.
> . . .

(Id. at R6-R7.)

Immediately following this subsection is one entitled, "CLAIM DENIAL."  It begins:

> CLAIM DENIAL
>
> Claims for benefits must be made in the manner provided by the particular Plan (for disability Plans and group health Plans, please see below).  No legal action to recover benefits or enforce or clarify rights under a Plan can be commenced until you have first exhausted the claims and review procedures provided under the Plan.
>
> If your claim for benefits under a Plan offered by the Company is denied, in whole or in part, the Plan Administrator of that Plan (or its delegate) must give you or your beneficiary, if applicable, written notice of the denial within a reasonable period of time, but not later than 90 days after the claim is received.  If special circumstances require more time to process your claim, you will receive a written explanation of the special circumstances prior to the end of the initial 90 day period and a decision will be made as soon as possible, but not later than 180 days after your claim is received.
>
> The written notice of your claim denial must include:
> •       Specific reasons why the claim was denied

- Specific references to applicable provisions of the Plan document or other relevant records or papers on which the denial is based, and information about where you may see them
- A description of any additional material or information needed to process the claim, and an explanation of why such material or information is necessary
- An explanation of the claims review procedure, including the time limits applicable to such procedure, as well as a statement notifying you of your right to file suit in federal or state court if your claim for benefits is denied, in whole or in part, on review

Upon request, you and/or your beneficiary will be provided without charge, reasonable access to, and copies of, all non-confidential documents that are relevant to any denial of benefits. If you disagree with the Plan Administrator's or insurer's decision, you have 60 days from the day you receive the original denial to request a review. Your request must be made in writing and sent to the Plan Administrator (as set forth in the insurance policy if the benefit is insured). The request should state the reasons why you want the claim reviewed and may also include evidence or documentation to support your or your beneficiary's position.

The Plan Administrator will reconsider your claim, taking into account all evidence, documentation, and other information related to your claim and submitted on your behalf, regardless of whether such information was submitted or considered in the initial denial of your claim. The Plan Administrator will make a decision within 60 days. If special circumstances require more time for this process, you will receive a written explanation of the special circumstances prior to the end of the initial 60 day period and a decision will be sent as soon as possible, but not later than 120 days after the Plan Administrator receives your request.
. . .

(Id. at R7-R8.) Notably, the Savings Plan SPD makes reference to these

sections of the *Guide*, by directing participants and beneficiaries to contact

Merrill Lynch if they wish to submit a claim, and stating that, "For more

information about what happens if your claim is denied, see the Administrative

Information section."  (Id. at Q12.)

Defendants, in bringing their motion for summary judgment, place

special emphasis on that portion of the *Guide* providing, "No legal action to

recover benefits or enforce or clarify rights under a Plan can be commenced

until you have first exhausted the claims and review procedures provided under

the Plan."  (Id. at R7.)  Plaintiff does not deny that the *Guide* contains that

language, but nevertheless takes the position that, for three reasons, the

administrative procedures specified in the *Guide* have no application to the

present lawsuit.  After carefully considering the matter in view of applicable

precedent, the Court is constrained to reject Plaintiff's arguments.

> 1.    Plaintiff's First Argument: The Administrative Procedures
>        are Inapplicable to Statutory Claims

Plaintiff first contends that the administrative procedures are

inapplicable to a suit, such as this, alleging breach of the fiduciary duties

imposed by ERISA.  Certainly, the Court appreciates that the administrative

process established by the *Guide* seems to contemplate challenges to the denial of claims for benefits, and does not explicitly provide for its application to claims predicated on a fiduciary's departure from its statutory obligations.  An examination of binding authority, however, undercuts any argument that the failure of the *Guide* to specifically reference such claims relieves a participant of the duty to exhaust the administrative review process.

The Eleventh Circuit, as related *supra*, "appl[ies] th[e] exhaustion requirement to both ERISA claims arising from the substantive provisions of the statute, and ERISA claims arising from an employment and/or pension plan agreement." Perrino, 209 F.3d at 1315 n.6.  What is more, in at least two reported cases, the Circuit either enforced or acknowledged a participant's duty to exhaust prior to bringing "statutory" claims where the language of the relevant plan, like here, could be read as limiting the administrative process to claims for benefits.  See Mason, 763 F.2d at 1226-27 (requiring participant bringing statutory claim to exhaust administrative process, where plan provided, "Any difference that may arise between you and the Company *concerning your application for, entitlement to or the amount of payment of a lump sum retirement allowance, pension or deferred benefit* may be taken up as

a grievance in accordance with the applicable provisions of the Master

Agreement beginning at step 3 of the Grievance Procedure . . . .") (emphasis

supplied); see also Curry, 891 F.2d at 845 n.3 (although ultimately excusing

failure to exhaust because participant was denied "meaningful access" to

review procedures, the Circuit acknowledged underlying obligation to exhaust

statutory claim in context of plan that, under the heading, "Claim Procedure,"

provided: "A plan participant or beneficiary shall make a *claim for plan*

*benefits* by filing a written request with the plan administrator upon a form to

be furnished to him for such purpose.") (emphasis supplied).

A recent decision by the District Court for the Northern District of

Alabama, Bickley v. Caremark Rx, Inc., 361 F. Supp. 2d 1317 (N.D. Ala.

2004), is also instructive in this regard.  There, the relevant plan documents,

much like those here, appeared to contemplate the administrative review of the

denial of a claim for benefits.  See Bickley, 361 F. Supp. 2d at 1323-24.  While

acknowledging that the plaintiff made no claim that he was denied benefits

under the plan, and that "[t]he fiduciary claims [he brought were] statutory if

they [were] anything[,]" the court nevertheless rejected the argument that the

plaintiff was free to initiate litigation without first pursuing administrative

14

review.  See id. at 1336 & n.34.  It reasoned:

> A review of Eleventh Circuit exhaustion jurisprudence reveals that the Court of Appeals has consistently required exhaustion of administrative remedies in ERISA cases.  The Eleventh Circuit's exhaustion rule could be characterized, practically speaking, as "if in doubt, exhaustion is required[."] In Counts v. Am. Gen. Life & Acc. Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997), the Court said "ERISA plaintiffs must exhaust available remedies before suing[.]"  [Cits.].  Counts says exhaustion applies to both claims to recover benefits and to actions to enforce a statutory right under ERISA.
>
> . . .
>
> While the Plan provisions for review of benefit claim denials could be more clearly written, the court doesn't think it's a stretch to say that any Plan participant unhappy with a benefits decision can take the matter to [the benefits claim processor] for review, and such participant can clearly take a complaint or concern over the operation and administration of the Plan, including any equitable questions, to . . . the Plan Administrator.

Id. at 1336.  The Court, in light of Mason and Curry, perceives no room for a different result on the facts of this case.

        2.    Plaintiff's Second Argument: Inclusion of the Administrative Procedures in the *Guide* Itself Forecloses Their Application

Plaintiff's second argument in support of his position that the aforementioned administrative procedures are inapplicable in this case is that the *Guide* is neither the "Savings Plan" nor the SPD summarizing the Plan. Consequently, Plaintiff continues, the exhaustion procedures articulated in the *Guide* cannot be brought to bear on a suit based on fiduciary breaches related to the administration of that Plan.  Stated differently, it is Plaintiff's contention that, because the administrative procedures were not included in the text of the Savings Plan SPD or the Plan itself, those procedures are of no effect.  The Court, at least in view of the record in this case, disagrees.

The Department of Labor's regulations interpreting ERISA make clear that there is nothing inherently problematic in the placement of binding administrative procedures outside the physical Plan and/or SPD.  For example, 29 C.F.R. § 2520.102-3(s) provides that a "plan's claims procedures may be furnished as a separate document that accompanies the plan's SPD," so long as certain conditions are met.  See 29 CFR § 2520.102-3(s) (permitting inclusion of claims procedures in separate document if "the document satisfies the style and format requirements of 29 CFR 2520.102-2 and . . . the SPD contains a statement that the plan's claims procedures are furnished automatically,

AO 72A
(Rev.8/82)

without charge, as a separate document"); <u>cf. also</u> <u>Mason</u>, 763 F.2d at 1226 (enforcing exhaustion requirement where certain administrative procedures were set forth in collective bargaining agreement).

Plaintiff nevertheless takes the position that Defendants cannot avail themselves of the above-referenced regulation, arguing that the Department of Labor's rule speaks in terms of benefit claims and "claims procedures," and does not authorize the placement of the "exhaustion requirement itself" in a separate document.  (<u>See</u> Pl.'s Objection and Reply to Def.s' Resp. to Pl.'s Statement of Undisputed Facts [127] at 11-12.)[5]  This argument is unpersuasive.

Although the Court is willing to accept, for purposes of argument, that this case fails to fit neatly into the precise contours of the cited regulation, the Eleventh Circuit has repeatedly evinced an unwillingness to permit such "technical" deficiencies to frustrate the policies underlying the exhaustion requirement.  Most recently, in <u>Perrino v. Southern Bell Telephone &</u>

---

[5] Plaintiff submitted his Motion for Leave to File Objection and Reply to Defendants' Response to Plaintiff's Statement of Material Facts [127] on April 6, 2006. While the Court grants Plaintiff the requested leave, and considers the arguments presented in the proposed filing, it does not find the objections and arguments raised therein sufficient to stave off summary judgment in this case.

AO 72A
(Rev.8/82)

Telegraph Co., 209 F.3d 1309 (11th Cir. 2000), the Circuit explained,

"employees . . . should not be able to avoid the exhaustion requirement where

technical deficiencies in an ERISA claims procedure do not hinder effective

administrative review of their claims."  209 F.3d at 1318; see also id. at 1317

("Our prior precedent makes clear that the exhaustion requirement for ERISA

claims should not be excused for technical violations of ERISA regulations that

do not deny plaintiffs meaningful access to an administrative remedy procedure

through which they may receive an adequate remedy.").

        Here, the relevant administrative procedures were recited in the same

document (i.e., the Guide) that contained the Savings Plan SPD.  Plaintiff does

not deny that he had access to that document.  The Court fails to see how the

inclusion of the administrative review procedures in a section of the Guide

captioned, "Administrative Information," rather than in the SPD itself (which,

incidentally, references that section in the context of discussing the appeal of

claim denials), in any way deprived Plaintiff of "meaningful access to an

administrative remedy procedure."  Plaintiff has pointed to no evidence that

would substantiate such a claim.  Such inclusion, then, does not foreclose

application of the exhaustion doctrine.

18

3.     Plaintiff's Third Argument: Language in the Plan Permits the Immediate Initiation of Suit

Finally, Plaintiff insists that the *Guide*, by providing that a participant claiming a misuse of Plan funds "may seek assistance from the U.S. Department of Labor or file suit in federal court[,]" bestows on participants the right to immediately pursue claims alleging malfeasance "akin" to such misuse. Again, the Court cannot agree.

The cited sentence is taken, almost verbatim, from the "model" language provided by the Department of Labor to inform plan participants of their general rights under ERISA.  See 29 C.F.R. § 2520.102-3(t)(2) ("If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court.").  The argument that the inclusion of this description in plan documents dispenses with the exhaustion requirement has not fared well in this Circuit.

Springer v. Wal-Mart Assocs. Group Health Plan, 908 F.2d 897 (11th Cir. 1990), is illustrative.  There, the Eleventh Circuit rejected the contention, analogous to that made by Plaintiff here (albeit in the context of a claim

19

AO 72A
(Rev.8/82)

challenging the denial of benefits), that a plan's acknowledgment of an ERISA

participant's right to sue in federal court permitted the initiation of litigation

without the necessity of exhaustion.  See 908 F.2d at 900.  Holding that the

district court had abused its discretion in finding that such a generic description

of participants' rights undermined the exhaustion defense, the Circuit

explained:

> This purported ground [for excusing failure to
> exhaust] is frivolous and contrary to the law of this
> Circuit as established by Mason.  The Plan language
> relied upon by the district court merely recites
> beneficiaries' general rights under ERISA.  It is
> undisputed that beneficiaries of ERISA-governed
> plans have the eventual right to seek federal court
> review of benefit denials.  The very premise of Mason
> and the other exhaustion cases, however, is that,
> despite ERISA's silence as to any explicit exhaustion
> requirement, a strong policy favoring such exhaustion
> underlies the statutory scheme.  [Cits.]  The very
> premise of the exhaustion requirement, therefore, is
> that the right to seek federal court review matures
> only after that requirement has been appropriately
> satisfied or otherwise excused.

Id.; cf. also Watts, 316 F.3d at 1208-09 (implying that model language, without

more, could not reasonably be read to foreclose exhaustion defense).  In light

of this authority, the Court does not find the statement relied on by Plaintiff,

20

whether considered in isolation or read in conjunction with the other provisions of the *Guide* and SPD, should be construed as vitiating the exhaustion requirement.

In sum, the Court concludes that, under <u>Mason</u> and its progeny, the Savings Plan required exhaustion of the type of claims brought by Plaintiff here.  Plaintiff's argument to the contrary fails to find consonance with the precedents that bind this Court.

### B.   Plaintiff's Failure to Exhaust his Administrative Remedies Cannot be Excused

Plaintiff next contends that, even if the Savings Plan is held to require exhaustion in this case, his noncompliance should be excused.  On the record before it, the Court is constrained to conclude otherwise.

### 1.   Plaintiff has Failed to Show Futility

Plaintiff first claims that exhaustion in this case would have been futile. <u>See, e.g.</u>, <u>Perrino</u>, 209 F.3d at 1315-16 (recognizing "futility" as an exceptional circumstance excusing failure to exhaust).  In support, he points to the defenses Southern Company and its co-defendants have advanced in this litigation, stating that those defenses show that any grievance presented to Defendants

would have proven fruitless.

Plaintiff's argument, in the view of the Court, misapprehends the concept of futility as it has been defined in this Circuit.  Futility does not arise in any instance where an ERISA fiduciary has indicated that it perceives little merit in the participant's underlying claim.  Cf. Garland v. Gen. Felt Indus., Inc., 777 F. Supp. 948, 951-52 (N.D. Ga. 1991).  Were that the rule, the exhaustion defense would hardly be a defense at all–virtually any action in which an ERISA fiduciary bothered to appear and defend on the merits would be permitted to proceed despite the absence of exhaustion.  The purposes advanced by the exhaustion requirement, which the Eleventh Circuit has described as "compelling," would go unserved.  See Mason, 763 F.2d at 1227.

Rather, in this Circuit, courts have consistently equated the concept of futility with the inability of a litigant to present his or her claim for administrative review and to have that claim considered, without reference to the probable outcome of the administrator's review.  See Perrino, 209 F.3d at 1318 ("it makes little sense to excuse plaintiffs from the exhaustion requirement where an employer is technically noncompliant with ERISA's procedural requirements but, as the district court determined in this case, the

22

plaintiffs still had a fair and reasonable opportunity to pursue a claim through

an administrative scheme prior to filing suit in federal court"); Leggett v.

Provident Life & Accident Ins. Co., 6:02-CV-1032ORL22KRS, 2004 WL

291223, at *15 (M.D. Fla. Feb. 9, 2004) ("[B]ecause there was a reasonable

administrative scheme available to [plaintiff] which offered the potential for an

adequate legal remedy . . . , [plaintiff] was required to avail herself of that

scheme before resorting to litigation.  Here, application of the futility exception

would eviscerate the exhaustion requirement."), aff'd mem., 125 Fed. Appx.

981 (11th Cir. 2004); In re Managed Care Litig., 298 F. Supp. 2d at 1295

(rejecting futility argument where plaintiffs failed to allege that their "actual

*efforts* at obtaining administrative review have been somehow blocked or

impeded by Defendants") (emphasis in original); Garland, 777 F. Supp. at 952

("Under the Eleventh [C]ircuit test for futility the Court cannot be persuaded by

the likely outcome of the administrative review.  The only inquiry, apparently,

is whether a grievance procedure exists.  In this case such procedure clearly

exists and could be utilized by the Plaintiff."); cf. also Makar v. Health Care

Corp. of the Mid-Atlantic (Carefirst), 872 F.2d 80, 83 (4th Cir. 1989) (holding

that appellants failed to show futility where they had "not shown that they

would be denied access to the claims procedures provided by the . . . plans")

(cited with approval in Springer, 908 F.2d at 901).  But cf. Horan v. Kaiser

Steel Ret. Plan, 947 F.2d 1412, 1416 (9th Cir. 1991) (declining to require

exhaustion where plan administrator filed amicus brief stating that plaintiffs

were not entitled to benefits); Corsini v. United Healthcare Corp., 965 F. Supp.

265, 269 (D.R.I. 1997) (failure to exhaust co-payment claim excused where

administrator had "vigorously defend[ed] that policy in this litigation and in

similar litigation pending in other jurisdictions").  Consequently, in this

Circuit, where a plaintiff has failed to even attempt to obtain administrative

review, the futility exception has often been held unavailable as a matter of

law.  See Leggett, 2004 WL 291223, at *15 (rejecting attempted invocation of

futility exception where the plaintiff "didn't just fail to exhaust her

administrative remedies; she failed to even *initiate* the process by filing a

claim") (emphasis in original); Byars, 2004 WL 1595399, at *4 ("As

[plaintiffs' claims] have never been presented for review, there is no provable

set of facts which could justify this Court in using its discretion to excuse

administrative exhaustion based on futility."); see also In re Managed Care

Litig., 298 F. Supp. 2d at 1295 (holding likewise); Garland, 777 F. Supp. at 952

(same).

Here, given the absence of any evidence that Plaintiff endeavored to present his claim for review, or that Defendants would have declined to consider it if he had, Plaintiff has fallen short of the "clear and positive showing of futility . . . required before suspending the exhaustion requirement." Springer, 908 F.2d at 901 (internal quotations omitted).  Accordingly, the argument that his failure to exhaust should be excused on the basis of futility is without merit.

2.    Plaintiff Cannot Avail Himself of Watts

Plaintiff's final contention is that exhaustion in this case is excused pursuant to the exception recently articulated by the Eleventh Circuit in Watts v. BellSouth Telecommunications, 316 F.3d 1203 (11th Cir. 2003).  There, the Circuit confronted the circumstance in which a plan participant, unrepresented by counsel, claimed to have initially understood plan documents which stated that she "may" pursue a second appeal from a denial of benefits, or "may" proceed to federal court, as meaning that she could pursue either avenue at her election.  Watts, 316 F.3d at 1205.  After her claim for benefits was initially denied on appeal, she decided to pursue the latter route, waited until the period

for a second appeal had expired, and retained an attorney.  Id. at 1206.  Only at that point, after obtaining legal advice, did she make a belated attempt to exhaust the administrative process.  Id.  Her efforts proved unavailing, however, as the participant's employer treated her second appeal as untimely, and raised the failure to exhaust defense in her subsequently filed lawsuit.  Id. The lower court sided with the employer, dismissed the action, and the participant appealed.

Relying heavily on the participant's affidavit detailing her confusion over the necessity of pursuing a second administrative appeal, the Circuit reversed the dismissal of the participant's lawsuit.  The court began by acknowledging its precedent holding that failure to exhaust "[o]rdinarily . . . bars federal court review of [a participant's] claim."  Id.  It went on, however, to explain that although "[t]o lawyers and judges familiar with the law in general and with ERISA law in particular, it may seem obvious that administrative remedies must come before a lawsuit, . . . to the average plan participant, who by virtue of being an ERISA claimant will sometimes be sick or disabled, there is nothing obvious about it."  Id. at 1208.  Cognizant of this potential for confusion, the Circuit carved out the following "exception" to the

AO 72A
(Rev.8/82)

exhaustion rule:

> If a plan claimant reasonably interprets the relevant
> statements in the summary plan description as
> permitting her to file a lawsuit without exhausting her
> administrative remedies, and as a result she fails to
> exhaust those remedies, she is not barred by the
> court-made exhaustion requirement from pursuing her
> claim in court.

Id. at 1209-10.

Applying the articulated rule to the facts before it, the court in Watts

held the participant's failure to exhaust did not warrant the dismissal of her

lawsuit.  It found that the plan, which, in permissive language, seemingly gave

participants the right to *either* pursue administrative remedies *or* initiate

litigation, could be understood by a layperson as dispensing with the necessity

of a second appeal.  Id. at 1207-09.  Critically for purposes of the instant case,

moreover, the Circuit also emphasized that it was this reasonable

misapprehension that led the Plaintiff to neglect to exhaust the administrative

process:

> Watts' affidavit, which must be taken as true for
> summary judgment purposes, establishes that the
> reason she did not complete her administrative
> remedies is that the summary plan description caused
> her to believe exhaustion of administrative remedies

27

> was not necessary to pursuing her claim in court.  The
> fact that Watts attempted to pursue those
> administrative remedies to completion the very same
> day she consulted with an attorney corroborates the
> thrust of her affidavit, which is that but for a
> misunderstanding engendered by the summary plan
> description, Watts would have timely pursued those
> remedies before going to court.

Id. at 1207; see also id. at 1208 ("it is more likely that a layperson told that she

'may' exhaust her administrative remedies and that she 'may' file a lawsuit

would conclude, *as Watts did*, that it was an either/or proposition–her option")

(emphasis supplied).

        The exception articulated in Watts, therefore, appears to have both an

objective and a subjective component, and demands proof of causation.  That

is, to invoke the exception, a participant must show (i) that the relevant plan

documents, objectively speaking, could reasonably be "interpret[ed] . . . as

permitting her to file a lawsuit without exhausting her administrative

remedies"; (ii) that she so interpreted them; and (iii) that, "as a result" of that

misinterpretation, she failed to exhaust the administrative process.  Id. at 1210.

        The problem with Plaintiff's attempted invocation of Watts is one of

proof–in particular, proof of these last two elements.  Even if this Court were

willing to read the relevant Plan documents as *susceptible* to a reasonable construction that no exhaustion was required in this case (a determination the Court is not required to make on the present record), Plaintiff has come forward with no evidence that *he* entertained that construction, or that it was that erroneous reading of the Plan that led him to fail in his duty to present his claims for administrative review.  The absence of such proof, at this stage of the litigation, is fatal to his claim.  See Anderson, 477 U.S. at 257 (non-movant on motion for summary judgment must come forward with proof showing genuine issue of material fact); cf. Watts, 316 F.3d at 1207 (plaintiff submitted affidavit explaining her understanding of plan documents and reason for failing to exhaust administrative remedies); Bojorquez v. E.F. Johnson Co., 315 F. Supp. 2d 1368, 1375 (S.D. Fla. 2004) (litigant seeking to avail himself of Watts, albeit unsuccessfully, submitted affidavit detailing his understanding of plan documents and reason he neglected to exhaust administrative remedies).

In sum, under the law of this Circuit, Plaintiff was required to, but did not, exhaust the administrative process before filing suit.  The record does not support his claim that this failure may be excused.  Accordingly, Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative

Remedies [115] is **GRANTED**.

## Conclusion

Plaintiff's Motion for Leave to File Objection and Reply to Defendants' Response to Plaintiff's Statement of Material Facts [127] is **GRANTED**. Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies [115] is **GRANTED**. Defendants' Motion for a Protective Order Staying Discovery Pending the Court's Ruling on their Motion for Summary Judgment [116] and Plaintiff's Motion to Compel [129] are **DENIED as moot**. This case is hereby **DISMISSED**.

**SO ORDERED** this  _19th_  day of April, 2006.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)